IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LESLEY STUART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14 C 1597 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | Magistrate Judge Susan E. Cox |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Lesley Stuart ("Plaintiff") appeals the Commissioner of Social Security's ("Commissioner") decision to deny her Social Security disability benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. We hereby grant Plaintiff's motion [dkt. 14] and deny the Commissioner's motion for summary judgment [dkt. 22]. The Administrative Law Judge's decision is remanded for further proceedings consistent with this opinion.

## STATEMENT

Plaintiff Lesley Stuart ("Plaintiff") appeals the Commissioner of Social Security's ("Commissioner") decision to deny her Social Security disability benefiti'ms under Title II of the Social Security Act ("SSA") and Supplemental Security Income ("SSI") under Title XVI of the SSA. Plaintiff filed a motion for summary judgment seeking to reverse the decision of the Administrative Law Judge ("ALJ"). A motion for summary judgment has been filed on behalf of the defendant, Carolyn W. Colvin, Acting Commissioner of Social Security. For the reasons outlined below, we grant Plaintiff's motion [dkt. 14] and deny the Commissioner's motion [dkt. 22]. The ALJ's decision is remanded for further proceedings consistent with this opinion.

On December 1, 2010, Plaintiff filed applications for disability benefits and SSI alleging that she has been disabled, due to borderline intellectual functioning and affective mood disorders,

1

since January 1, 2009.[1] The Social Security Agency denied both of Plaintiff's claims initially and denied them again upon reconsideration.[2] Plaintiff filed a request for a hearing before an ALJ on August 29, 2011.[3] That request was granted, and ALJ Karen Sayon held a video hearing on November 13, 2012.[4]

In making her decision, the ALJ relied on medical evidence produced by four different physicians. In 2010, Terrance E. McGovern, Ph.D., performed a psychological evaluation of the plaintiff and concluded that: (1) she suffered from a depressive disorder; (2) she suffered from anxiety; (3) she had a learning disorder highlighted by spelling and math scores significantly below average; (4) she had borderline intellectual functioning; (5) she needed 25% more time to complete any spelling or math tasks; and (6) she should be referred to a psychiatrist to assess her need for supportive counseling and medication.[5]

Next, Leslie Fyans, Ph.D., a State Agency examiner, reviewed Dr. McGovern's findings and completed a Mental Residual Functional Capacity Assessment ("MRFCA"), in which she determined that Plaintiff had mild to moderate impairments.[6] Dr. Fyans echoed Dr. McGovern's diagnoses of depression, anxiety, and borderline intellectual functioning,[7] and concluded that Plaintiff could perform routine chores and tasks, had the cognitive skills for simple 1-2 step unskilled tasks, and could tolerate work pressures.[8] On February 25, 2011, Patricia Beers, Ph.D.,

---

[1] R. at 62-63.
[2] R. at 11.
[3] *Id.*
[4] *Id.*
[5] R. at 266-270.
[6] R. at 282.
[7] R. at 272-273, 275.
[8] R. at 288.

the second State Agency examiner to review Plaintiff's claims, affirmed Dr. Fyans's decision as written.[9]

Plaintiff claims that Joseph Chuprevich, D.O., should be considered her treating physician. The ALJ disagreed with Plaintiff and assigned greater weight to the two State Agency examiners. Dr. Chuprevich examined Plaintiff on May 31, 2011, and, like the previous physicians, found that she suffered from depression, anxiety, and borderline intellectual functioning.[10] Dr. Chuprevich noted that Plaintiff "gets off the subject and she doesn't stay on task," and prescribed her Zoloft for her depression.[11] This is the earliest record of any treatment performed by Dr. Chuprevich, but Plaintiff contends that he is her treating physician because, as she indicated in her disability report, she treated with him once in 1994, and twice in 2010.[12] Additionally, the Plaintiff visited Dr. Chuprevich again in November of 2011.[13] At this visit, Dr. Chuprevich completed his own MRFCA of the Plaintiff and assessed moderate to marked limitations; he also renewed her prescription for Zoloft.[14]

At Plaintiff's hearing before the ALJ, she testified that her husband shopped for groceries, but responded that she could, at times, do the shopping with difficulty.[15] She also testified that she watches television and reads the newspaper while at home.[16] Plaintiff's husband testified that although she performs some household chores at her own pace, he has to take over much of the cleaning "[b]ecause she just can't seem to figure out what she needs to do

---

[9] R. at 298.
[10] R. at 290.
[11] *Id.*
[12] R. at 201.
[13] R. at 301.
[14] *Id.*
[15] R. at 35.
[16] R. at 38-39.

next."[17] He also testified that she has no concept of time, washes her hands eight times during a given meal, and separates laundry to such an extent that it takes her seven loads of laundry to wash clothes that should be completed in two or three loads.[18] Plaintiff's husband summed up the work at home by testifying, "[if] I want something done, I got to do it myself."[19]

Plaintiff also testified about her employment at Burger King, where she worked from 1996 to 2011.[20] The hearing transcript is relatively unclear regarding what Plaintiff's duties were at any given time, but it seems that her employer moved her around to different tasks to find one that she could perform satisfactorily. She testified that she started out operating the fryer for a few years, moved to the broiler for the next few years, and began making sandwiches during the slow periods.[21] With the addition of new tasks, Plaintiff got more frustrated, distracted, and confused, and her employer ended up "sticking [her] out in the dining room as a dining room attendant."[22] She testified that she began having a "heck of a time" trying to keep up, and that work became "too much chaos."[23] Again, it is unclear whether she was working as a dining room attendant in addition to the other tasks, or whether her employer narrowed the scope of her employment to provide Plaintiff with work that she could manage. Plaintiff attributed her difficulties to being under pressure to work faster, which caused her to become more flustered.[24] In January of 2009, as her employer became less patient with her questions and mistakes,[25] Burger King reduced her hours so that she was working only one day per week.[26]

---

[17] R. at 51-52.
[18] R. at 47, 50.
[19] R. at 53.
[20] R. at 164-168.
[21] R. at 34.
[22] R. at 32.
[23] R. at 34-35.
[24] R. at 44.
[25] R. at 42.
[26] R. at 39-40.

Eventually, she was terminated on May 21, 2011, due to her inability to perform her job satisfactorily.[27]

Following the hearing, ALJ determined, *inter alia*, that: (1) Plaintiff had not engaged in substantial gainful activity since January 1, 2009; (2) Plaintiff suffered from severe impairments in the form of borderline intellectual functioning, a learning disorder, anxiety, and depression; (3) Plaintiff's impairments did not meet the severity of "the listings" in 20 CFR Part 404, Subpart P, Appendix 1; (4) Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Plaintiff can follow simple instructions, perform routine tasks, make simple work-related decisions, should have no public interaction, and should not perform work with fast-paced production requirements; and (5) there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, given her age, education, work experience, and residual functional capacity.[28] The ALJ found that the Plaintiff's allegations of disabling impairments were not credible and cited the following justifications: Plaintiff graduated from high school, obtained a driver's license; worked for 15 years; she is able to shop, count change, and write money orders; she watches television; and she reads the newspaper.[29]

## I. STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act,[30] if it is supported by substantial evidence, and if it is free of legal error.[31] Substantial evidence is such "relevant

---

[27] R. at 16.
[28] R. at 15.
[29] R. at 17.
[30] 20 C.F.R. §§ 404.1520(a) and 416.920(a).
[31] 42 U.S.C. § 405(g).

5

evidence as a reasonable mind might accept as adequate to support a conclusion."[32] This Court must reverse if there is an error of law, even if the evidence adequately supports the conclusion.[33] Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion.[34] A "minimal[] articulat[ion] of her justification" is enough.[35]

## II. DISCUSSION

The Plaintiff has raised several arguments supporting reversal of the ALJ's decision. We address two aspects of the ALJ's opinion: her analysis of Plaintiff's treating physician, and her failure to build a logical bridge between the evidence and her credibility determination.

### A. The ALJ Erred in Analyzing Dr. Chuprevich's Treating Relationship With Plaintiff.

The ALJ did not assign controlling weight to Dr. Chuprevich's medical opinion as a treating physician, and instead placed "great weight" on the opinions of the two state examiners.[36] Plaintiff argues that the ALJ did not assign the proper weight to Dr. Chuprevich's opinion and ignored information in the record that established a more substantial treatment relationship.[37] When an ALJ does not give a treating physician's opinion controlling weight, she must consider five factors: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability"; (4) consistency "with the record as a whole"; and (5) whether the treating physician was a

---

[32] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
[33] *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).
[34] *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).
[35] *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).
[36] R. at 17.
[37] Pl.'s Mot., 5-6.

6

specialist in the relevant area.[38] In this case, the ALJ cited only "minimal treatment and no medication adjustments" in justifying her decision not to grant controlling weight to Plaintiff's treating physician.[39]

While the ALJ's decision to give minimal weight to Dr. Chuprevich's opinion was not entirely unfounded, the process she used to arrive at that decision was deficient. Further assessment of the factors as mandated by the CFR is required. For example, the record contains treatment records from only two of Plaintiff's visits to Dr. Chuprevich,[40] but Plaintiff's Disability Report asserts that Dr. Chuprevich treated Plaintiff as far back as 1994.[41] The ALJ noted that Plaintiff was diagnosed with depression when she was 27 years old.[42] Plaintiff was born in 1966,[43] which means she would have first been diagnosed with depression right around the time she claimed to have been first treated by Dr. Chuprevich. Even considering the 1994 visit, the ALJ may have attributed the proper weight to Dr. Chuprevich's opinion, but her failure to apply the five factors from 20 C.F.R. § 404.1527(c)(2)-(5) warrants remand for a thorough analysis.[44]

> B. The ALJ Failed to Build a Logical Bridge Between the Evidence and Her Ultimate Credibility Determination

When assessing the credibility of evidence, an ALJ must "explain the reasoning behind the decision to credit some evidence over the contrary evidence, such that [a reviewing court]

---

[38] 20 C.F.R. § 404.1527(c)(2)-(5).
[39] R. at 18.
[40] R. at 300-304.
[41] R. at 201.
[42] R. at 16.
[43] R. at 63.
[44] *See Eakin v. Astrue*, 432 F. App'x 607, 612 (7th Cir. 2011) (holding "even assuming that the ALJ had legitimate reasons to discount [the treating physician's] opinion, she did not apply the correct legal standard in determining what weight to assign it."); *see also Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) (holding that the ALJ is required to consider the factors provided in 20 C.F.R. § 404.1527(c)(2)-(5)); *e.g.*, *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (holding the ALJ erred by not explicitly addressing the factors provided in 20 C.F.R. § 404.1527(c)(2)-(5)).

could understand the ALJ's logical bridge between the evidence and the conclusion."[45] In this case, the ALJ noted that she did not find Plaintiff's allegations of disabling limitations credible;[46] however, she failed to build a "logical bridge" between the evidence and her ultimate conclusions.[47] The ALJ based her credibility determination largely in part on two facts: (1) Plaintiff completed some chores while at home; and (2) Plaintiff worked for her previous employer for 15 years.[48]

The ALJ justified her credibility determination in part on Plaintiff's ability to shop, count change, write money orders, watch television, and read the newspaper.[49] The ALJ found that these activities establish concentration and ability to perform simple tasks.[50] The Seventh Circuit has held that "a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time."[51] At Plaintiff's hearing, her husband testified that she performs household chores because "she needs things to do." He testified that he does the cooking, banking, and most of the housecleaning,[52] that she has no concept of time, that she washes her hands eight times during any given meal, and that she separates laundry more than is necessary.[53] He summed up his wife's duties by testifying that if he wants something done properly, he has to do it himself.[54] While the ALJ considered this testimony, she ultimately found that it was not credible because it

---

[45] *Moore,* 743 F.3d at 1124.
[46] R. at 17.
[47] *Moore,* 743 F.3d at 1121.
[48] R. at 17.
[49] *Id.*
[50] *Id.*
[51] *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (citing *Punzio v. Astrue,* 630 F.3d 704, 712 (7th Cir. 2011)).
[52] R. at 50, 51.
[53] R. at 47, 50, 52.
[54] R. at 51.

was "not consistent with the objective medical evidence."[55] Absent any further explanation or application of these facts to the medical evidence itself, this rejection amounts to exactly the type of "meaningless boilerplate" language that the Seventh Circuit has rejected.[56] Furthermore, the ALJ failed to consider that Plaintiff spends all of her time at home;[57] although she completes some household tasks, she completes them at a reduced pace. Plaintiff's difficulties managing tasks at her previous employment further evidence these difficulties at home.

The ALJ also justified her credibility determination on the fact that Plaintiff worked at Burger King for 15 years,[58] but holding a job for a prolonged period of time does not preclude a finding of disabling impairments. The Seventh Circuit has held that employment alone "is not proof positive of ability to work, since disabled people, if desperate, or employed by an altruist, can often hold a job."[59] The ALJ may have been correct in finding that Plaintiff does not have disabling limitations because she was able to work for the last 15 years; however, the ALJ failed to explain how this fact justified her decision to discredit Plaintiff's allegations.

Both the Plaintiff's and her husband's testimony indicate a steady decline in her condition and overall job performance beginning as late as January 2009, when her hours were reduced to one day a week.[60] Plaintiff was unable to clean the bathrooms in addition to attending to the dining room and felt overwhelmed at work.[61] Her employer became impatient as she had a "heck of a time" trying to keep up, and working became "too much chaos."[62] Eventually,

---

[55] R. at 18.
[56] *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010).
[57] R. at 35.
[58] R. at 17.
[59] *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998).
[60] R. at 39-40.
[61] R. at 16.
[62] R. at 34-35.

Plaintiff's inability to manage these simple tasks led to her termination.[63] The worsening of Plaintiff's condition may have caused the deterioration in her performance at work. The ALJ even recognized that Plaintiff's condition had deteriorated when she found that Plaintiff was not fit to return to her previous work.[64] The fact that she continued to work, despite her difficulties, does not immediately discredit the claim that her limitations are disabling. Again, we recognize that Plaintiff's continuous employment for 15 years indicates that she is capable of working; however, the ALJ's treatment of this fact requires further explanation. On remand, the ALJ should gather more evidence about Plaintiff's duties at Burger King, as well as the difficulties she had and when they began, and compare that evidence to the objective medical evidence. Failure to build this logical bridge in her initial decision warrants remand.

## CONCLUSION

For the foregoing reasons, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment is granted [dkt. 14] and the Commissioner's motion for summary judgment is hereby denied [dkt. 22].

**ENTER:**
**DATED:**    June 18, 2015                               /s/ Susan E. Cox
                                                          Susan E. Cox
                                                          United States Magistrate Judge

---

[63] R. at 16.
[64] R. at 18.